WARDER-BUSHNELL & GLESSNER COMPANY *vs.* MINNESOTA & DAKOTA
ELEVATOR COMPANY.

October 20, 1890.

"Seed-Grain" Note.—Upon the facts in this case, it is *held* that the plaintiff was a "party furnishing" seed wheat to one B., within the meaning of Gen. St. 1878, c. 39, § 21; that the note given by B. to plaintiff for the value of said wheat was a "seed-grain" note, and the amount thereof a valid first lien on the product of said seed.

Appeal by defendant from an order of the district court for Hennepin county, refusing a new trial after a trial before *Reá*, J., (a jury being waived,) and judgment of $112.50 ordered for plaintiff.

*Jackson & Atwater*, for appellant.

*Johns, Michael & Johns*, for respondent.

COLLINS, J. On the trial of this action there was no controversy over the facts. January 23, 1888, one Barsaloux, being indebted to the plaintiff corporation, executed and delivered to it his promissory note, due November 1st of the same year, for the sum of $121.40, securing it by a mortgage on certain personal property, including all wheat, oats, and barley which might be raised by him that year upon a duly-described tract of land which he then occupied as a farm, near the village of Argyle in this state. On the 26th of December, 1888, no part of this note had been paid. Of the crop of wheat raised by Barsaloux and covered by the chattel mortgage, there then remained in a bin upon the farm, and still in his possession, 150 bushels, which he wished to retain and use for seed. For this purpose he made application to an agent for plaintiff at Argyle. The latter consented; and, in pursuance of an agreement that Barsaloux should keep and use the 150 bushels of wheat for seeding his farm, he, on the day last mentioned, executed and delivered a "seed-grain" note, in due form, payable to plaintiff's order October 1, 1889, for the value or agreed price of the wheat, $112.50. This note was seasonably filed in the proper office as required by the seed-grain act, (Gen. St. 1878, c. 39, §§ 21 *et seq.*) The wheat in question was

used for seed by Barsaloux upon the land described in plaintiff's note, and of the product thereof the defendant admits that it has received and retained 232 bushels, of the value of $185.60, the same having been sold and delivered to it by Barsaloux in the fall of 1889. The court below, trying the case without a jury, ordered judgment for the plaintiff, on its findings, for the amount of the unpaid seed-grain note. Defendant appeals from an order refusing a new trial.

We quite agree with counsel for appellant that if the execution and delivery of the note was merely a device to obtain additional security for a pre-existing debt, the plaintiff ought not to prevail, and that, whatever form the transaction assumes, it must be *bona fide*, or it will be held void. The grain must be actually "furnished" to the purchaser, and the debt represented by the note must be actually incurred on account of such furnishing. This, in effect, has been declared more than once by this court. *Kelly* v. *Seely*, 27 Minn. 385, (7 N. W. Rep. 821;) *Nash* v. *Brewster*, 39 Minn. 530, (41 N. W. Rep. 105;) *Smith* v. *Roberts*, 43 Minn. 342, (46 N. W. Rep. 336.) But, by requiring that the grain must be furnished by the one and received by the other party to the note or contract, it should not be understood that he who furnishes must in every instance have actual, visible possession of the grain, or that he must carefully measure it out, and make a manual delivery thereof to the purchaser or borrower. Nor does the law demand that the sale or loan of the grain, and the execution and delivery of the note or contract, be totally disconnected from all previous dealings between the parties. The statute does require, however, that the transaction be an honest one, free from an intent to evade its provisions and purposes. In the case now before us the plaintiff, by virtue of its mortgage, was the legal owner of the 150 bushels of wheat. It was entitled to immediate possession of the same for foreclosure and sale under the terms of the mortgage. Or it could foreclose, under the statute, by giving the prescribed notice, and, probably, without taking possession. Had the plaintiff mortgagee gone through the ceremony and expense of foreclosure, and thereupon obtained complete title to the wheat, would any one question the validity of a seed-grain note subsequently executed and delivered by Barsaloux for its value? Certainly not. Practically this

is what was done by these parties. Barsaloux's rights in the wheat were those of a redemptioner only, and this right he could waive or relinquish, if so disposed. By entering into the contract of December 26, 1888, he relinquished his right to redeem from the mortgage, and released the plaintiff from the necessity of foreclosing, while the latter relinquished and released its claim on the mortgaged wheat by selling the same to the mortgagor for a specified use, with security specially provided for by statute. The transaction seems to have been a perfectly fair one, out of which the plaintiff herein could make nothing unjustly, and entered into to benefit Barsaloux and no other person.

Order affirmed.